Shirley L. HEIKES, Next Friend of Michael K. Hodges, a minor, Plaintiff,

v.

Arthur S. FLEMING, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. P-2094.

United States District Court
S. D. Illinois, N. D.
Dec. 23, 1958.

Leonard C. Berry, Macomb, Ill., for plaintiff.

Harlington Wood, Jr., U. S. Atty., Springfield, Ill., for defendant.

MERCER, Chief Judge.

This is an action to review a decision of the Appeals Council of the Social Security Administration disallowing plaintiff's claim for child benefits under the provisions of Section 202(d) of the

Social Security Act, 42 U.S.C.A. § 402 (d).

Plaintiff, Shirley L. Heikes, married Edwin Hodges, the deceased wage earner, on March 12, 1952. A son, Michael K. Hodges, was born of this union on January 15, 1953. In the meantime, plaintiff and Hodges were separated and the child never lived with his father. The plaintiff obtained a divorce from Hodges on February 8, 1955 and, thereafter, on April 2, 1955, was married to George Heikes. Hodges died on October 17, 1955. On January 13, 1956, plaintiff, on behalf of Michael, filed an application under Section 202(d) of the Act for child's insurance benefits.

Section 202(d) (3) of the Act provides in pertinent part, that a child who has not attained the age of eighteen is deemed dependent upon his natural father, and, therefore, entitled to insurance benefits upon the death of the natural father, (Section 202(d) (1) (C), unless at such time the father was not living with or contributing to the support of the child, and such child was living with and was receiving more than one-half of his support from his stepfather. Other exclusionary conditions of that subsection have no application to this case.

On April 30, 1956, the Bureau of Old-Age and Survivors Insurance of the Social Security Administration denied plaintiff's application for child's benefits on the ground that the child, Michael, was, at the time of the death of Hodges, the natural father, living with and receiving more than one-half of his support from his stepfather, Heikes. Thereafter, upon plaintiff's request, a hearing was had before a Referee, who, on October 23, 1957, reversed the Bureau's determination and allowed plaintiff's claim. The Appeals Council on its own motion then reviewed the Referee's decision and on January 21, 1958 reversed the decision and disallowed the claim. This proceeding followed.

Plaintiff prays a summary judgment reversing that decision of the Appeals Council and reinstating the decision of the Referee. The cause is an appropriate one for summary decision, there being no questions of fact before the court for decision. Rule 56, F.R.Civ.P., 28 U.S.C.A.

■ The Social Security Act provides that upon judicial review of administrative agency decisions, the findings of the agency are conclusive if supported by substantial evidence. 42 U.S.C.A. § 405 (g). That conclusive restriction upon the courts extends as well to the inferences drawn by the agency if they have a substantial basis upon the record evidence. Rosewall v. Folsom, 7 Cir., 239 F.2d 724.

Unfortunately, that guiding principle of judicial review of administrative decisions is much more easily stated than applied. "Support by substantial evidence" is not a term of art admitting of precise definition. As the Court of Appeals for the Eighth Circuit so aptly said in Osceola County Co-Op Creamery Ass'n v. N. L. R. B., 251 F.2d 62, 64, "no definite formula for judicial review" of administrative decisions can be devised and "much must be left to the sound judicial discretion of the reviewing court." In the sense here used however, "sound discretion" must be read in the light of existing judicial pronouncements which point the way to a happy balance between the seemingly irreconcilable concepts of finality of administrative decision and the exercise of judicial discretion on review thereof.

Any review of judicial decisions pertinent to this question must begin with the decision in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, the first definitive ruling as to the permissible scope of judicial review under the "substantial evidence" principle. In that case, a trial examiner assigned to hear a petition for reinstatement of certain discharged employees recommended that the petition be dismissed. The Board overruled the examiner and ordered reinstatement. On review the Court of Appeals for the Second Circuit held that substantial evidence supported the Board's order and that the court, under the substantial evidence

principle could attach no significance to the Board's rejection of the findings of its trial examiner. National Labor Relations Board v. Universal Camera Corp., 179 F.2d 749. The decision of the Court of Appeals was reversed and the cause remanded, the Court holding that the findings of the examiner were relevant to a determination whether the administrative order was supported by substantial evidence. In pertinent part, the Court said, 340 U.S. at pages 496–497, 71 S.Ct. at page 169:

"We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is 'substantial.'

"The direction in which the law moves is often a guide for decision of particular cases, and here it serves to confirm our conclusion. However halting its progress, the trend in litigation is toward a rational inquiry into truth, in which the tribunal considers everything 'logically probative of some matter requiring to be proved.' * * * It would reverse this process for courts to deny examiners' findings the probative force they would have in the conduct of affairs outside a courtroom.

"We therefore remand the cause to the Court of Appeals. On reconsideration of the record it should accord the findings of the trial examiner the relevance that they reasonably command in answering the comprehensive question whether the evidence supporting the Board's order is substantial."

While a court, within the scope of the principle announced in the Universal case, may not circumscribe the power of an administrative agency to reverse the findings of its referee or examiner within the narrow confines of the "clearly erroneous" concept established by the Federal Rules of Civil Procedure, F.C.C. v. Allentown Broadcasting Co., 349 U.S. 358, 75 S.Ct. 855, 99 L.Ed. 1147, it is the duty of a court in reviewing an administrative decision to consider both the evidence supporting and the evidence opposed to that decision. Universal Camera Co. v. N. L. R. B., supra, 340 U.S. at page 497, 71 S.Ct. at page 169; Local No. 3, etc. v. N. L. R. B., 8 Cir., 210 F.2d 325, certiorari denied Local No. 3 etc. v. Wilson & Co., 348 U.S. 822, 75 S.Ct. 36, 99 L.Ed. 648. In the latter case the court said that the Universal Camera decision requires "this court in cases here on petition for review of an order of the National Labor Relations Board to consider the conflicting evidence and if it is our duty to consider it then we must pass upon its weight." 210 F.2d at page 330. In Southern Stevedoring Co. v. Voris, 5 Cir., 218 F.2d 250, 254, the court interpreted the Universal Camera principle as imposing upon a court reviewing an administrative decision "the duty * * * to determine, on the basis of the entire record, whether there is substantial, reliable and probative evidence to support the findings of the administrative agency." In National Labor Relations Board v. Pacific Intermountain Express Co., 8 Cir., 228 F.2d

170, 171, the court said, inter alia, interpreting the Universal Camera doctrine:

"The court is justified in setting aside the Board's decision when it cannot conscientiously find that the evidence supporting the Board's decision is substantial when viewed in the light of the record in its entirety including the evidence opposed to the Board's view."

Finally, in In re United Corporation, 3 Cir., 249 F.2d 168, the court reviewed an order of the Securities and Exchange Commission which was based upon the agency's rejection of its trial examiner's findings on certain questions as to compensation allowable for services rendered in the reorganization of United. In reversing the order in part, the court said:

"As a general rule, the Commission's findings should be given much weight in cases of this nature * * *. A slightly different rule is applicable, however, when, as here, a final determination by an administrative agency *rejects* the findings of a hearing examiner. * * *

"* * * In the determination of whether the Commissions' Order was supported by substantial evidence, the more specific findings of the Hearing Examiner, rejected by the Commission without the making of any express new findings, are entitled to considerable weight. As was said in National Labor Relations Board v. Supreme Bedding & Furniture Mfg. Co., 5 Cir., 1952, 196 F.2d 997, 998: 'The law governing the consideration to be given to findings of examiner and Board, where they are in conflict is equally well settled.' There, in reliance on the Universal Camera case, it was found that the recommendations of the examiner were supported by substantial evidence while the findings of the Board were not. Accordingly, the enforcement of the Board Order was denied." 249 F.2d at pages 178–179.

■ Applying the teachings of these judicial pronouncements to the review of the decision here, is the Appeals Council's decision denying plaintiff's claim substantially supported by probative evidence upon the record as a whole? I think not.

The only question in issue before the agency was that whether Heikes, the stepfather, at the time of the death of Hodges, was furnishing more than one-half of the support for the child on whose behalf the claim had been filed. Relevant to that issue, plaintiff testified as follows: from her remarriage to Heikes on April 2, 1955, until the last of May, 1955, she, Heikes and the child lived with Mrs. Zimmerman at Colchester; in the latter part of May, she and Heikes rented a house and moved to Blandinsville; the child stayed on with Mrs. Zimmerman for an additional two weeks or so, and was then taken to Blandinsville; during the period from April 2, until the child was moved to Blandinsville, Mrs. Zimmerman supported the child and Heikes contributed nothing to Mrs. Zimmerman for the support of himself, plaintiff or the child; after the child moved to Blandinsville he spent most weekends and four weeks centered around the date of August 26, 1955, with Mrs. Zimmerman in Colchester; Heikes contributed nothing to the child's support during such periods spent with Mrs. Zimmerman; during all pertinent times, Heikes contributed nothing toward clothing the child; after moving to Blandinsville, Heikes paid $20 per month rent for the house in which he, plaintiff and the child resided, and he contributed some money toward food for the family; at the time she moved to Blandinsville, plaintiff had some savings which she there used to furnish food for the family; plaintiff was granted a divorce from Hodges in February, 1955, the decree ordering Hodges to pay $7.50 per week to the plaintiff for support of the child; and she estimated food and clothing costs for the child for the year last preceding October 17, 1955, at $300 and $250, respectively.

In her signed statement made on March 8, 1956, (Exhibit 21), plaintiff stated that she had savings of approximately $300 when she and Heikes moved to Blandinsville, and that by October 17, 1955, all of her savings had been withdrawn and there used to support the family.

Mrs. Zimmerman's testimony corroborated that of her daughter in all material details and she expressly testified that Heikes had paid her nothing toward the support of the child at any time relevant to plaintiff's claim.

Mr. Heikes testified that when the child was at Blandinsville he furnished shelter for him and money for food; that his wife had used her savings in helping feed the family during the critical period of time; and that he had not, during the critical period contributed anything to Mrs. Zimmerman for support of the child. He denied the correctness of, and denied having made, a statement dated March 8, 1955, that he had paid Mrs. Zimmerman $10 per week during the months of April and May when he and his wife were living with Mrs. Zimmerman at Colchester.

In addition to the testimony of the above witnesses, the record reveals that Hodges had never lived with the child; that Hodges, subsequently to April 2, 1955, contributed $22.50 pursuant to the divorce decree toward support of the child; and that plaintiff had employed an attorney some time prior to the death of Hodges to represent her in an attempt to compel Hodges to comply with the support provisions of said decree.

Except for the noted discrepancy between the testimony of Heikes, and the statement appearing in the March 8 statement, there is no conflict in the evidence. After hearing the testimony of the witnesses the Referee found that the child was not receiving more than one-half of his support from his stepfather and allowed the claim. The Appeals Council reversed the findings upon that critical issue and disallowed the claim.

Upon the whole record I am convinced that the Appeals Council's decision is not supported by substantial evidence. This is not a case in which the evidence is largely in dispute. The Referee who heard the witnesses testify and who was in a superior position to determine their credibility found that Mrs. Zimmerman, not the stepfather, contributed more than one-half to the support of this child during the determinative period of time. The court cannot view the record as a whole other than as lending substantial support to the Referee's finding on this issue, not to that of the Appeals Council.

The decision of the Appeals Council is reversed and the decision of the Referee awarding child's insurance benefits to Michael K. Hodges is reinstated.